IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|                                          |     |                              |
|------------------------------------------|-----|------------------------------|
| THE WASHINGTON UNIVERSITY,               | )   |                              |
|                                          | )   |                              |
| Plaintiff,                               | )   |                              |
|                                          | )   | C.A. No. 13- 2091 (GMS)      |
| v.                                       | )   |                              |
|                                          | )   | TGF CEVGF 'RWDNKE'XGTUKQP''' |
| WISCONSIN ALUMNI RESEARCH FOUNDATION,    | )   |                              |
|                                          | )   |                              |
| Defendant.                               | )   |                              |

**PLAINTIFF THE WASHINGTON UNIVERSITY'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANT WISCONSIN ALUMNI RESEARCH FOUNDATION'S
MOTION TO DISMISS THE COMPLAINT**

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
amayo@asbhy-geddes.com

*Attorneys for Plaintiff*
*The Washington University*

*Of Counsel*:

Michael A. Jacobs
J. Ryan Gilfoil
Morrison & Foerster LLP
425 Market Street, 32nd Floor
San Francisco, CA 94105
(415) 268-7000

E. Cary Miller
Morrison & Foerster LLP
12531 High Bluff Drive
Suite 100
San Diego, CA 92130
(858) 720-5100

Dated: March 24, 2014

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

INTRODUCTION & SUMMARY OF ARGUMENT ............................................... 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ..................................................................................................... 6

I.      WASHINGTON UNIVERSITY STATES A CLAIM FOR BREACH OF CONTRACT ............................................................................................... 6

      A.      The 1995 Agreement Did Not Grant WARF "Sole Discretion" to Value the '815 Patent ..................................................................... 8

      B.      The 1995 Agreement Did Not Authorize WARF to Value the '815 Patent Once and Then Forget About It ....................................... 10

II.     WASHINGTON UNIVERSITY STATES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ........... 11

III.    WARF'S MOTION TO DISMISS THE BREACH OF FIDUCIARY DUTY SHOULD BE DENIED ........................................................................... 13

      A.      Washington University States a Claim for Breach of Fiduciary Duty ................ 13

      B.      WARF's Responsive Arguments Fail ................................................. 15

IV.    DISMISSAL OF WASHINGTON UNIVERSITY'S CLAIM FOR AN EQUITABLE ACCOUNTING IS INAPPROPRIATE ................................. 16

V.     WASHINGTON UNIVERSITY'S CLAIMS ARE NOT TIME-BARRED ................. 17

      A.      Washington University's Contract Claims Are Timely Because Each Royalty Underpayment Gave Rise to a New Claim ........................................... 18

      B.      Washington University's Breach of Fiduciary Duty Claim Is Timely Under the Discovery Rule ................................................................. 18

      C.      The Doctrine of Equitable Estoppel Entirely Precludes WARF From Asserting the Statutes of Limitations ............................................. 19

CONCLUSION ................................................................................................. 20

**CASES**

*Am. Trust & Sav. Bank v. Phila. Indem. Ins. Co.*,
  678 F. Supp. 2d 820 (W.D. Wis. 2010) ........................................................................18, 19

*April Enters., Inc. v. KTTV*,
  147 Cal. App. 3d 805 (1983) ................................................................................16

*Bitker & Gerner Co. v. Green Inv. Co.*,
  76 N.W.2d 549 (Wis. 1956)........................................................................................9

*Chapman v. B.C. Ziegler & Co.*,
  839 N.W.2d 425 (Wis. Ct. App. 2013) ................................................................9

*Didion Milling, Inc. v. Agro Distrib., LLC*,
  2007 WL 702808 (E.D. Wis. Mar. 2, 2007) ........................................................17

*Foseid v. State Bank of Cross Plains*,
  541 N.W.2d 203 (Wis. Ct. App. 1995) ................................................................12

*Gouger v. Hardtke*,
  482 N.W.2d 84 (Wis. 1992)........................................................................................15

*Hauer v. Union State Bank of Wautoma*,
  532 N.W.2d 456 (Wis. Ct. App. 1995) ................................................................12

*Herder Hallmark Consultants v. Regnier Consulting Grp.*,
  685 N.W.2d 564 (Wis. Ct. App. 2004) ................................................................9

*Jackson v. McKay-Davis Funeral Home*,
  830 F. Supp. 2d 635 (E.D. Wis. 2011)........................................................................15

*Kaloti Enters., Inc. v. Kellogg Sales Co.*,
  699 N.W.2d 205 (Wis. 2005)........................................................................................16

*LDC-728 Milwaukee, LLC v. Raettig*,
  727 N.W.2d 82 (Wis. Ct. App. 2006) ................................................................11

*McDonald v. Century 21 Real Estate Corp.*,
  390 N.W.2d 68 (Wis. Ct. App. 1986) ................................................................12, 15, 16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*,
  377 N.W.2d 605 (Wis. 1985)........................................................................................13, 14

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Mgmt. Computer Servs. v. Hawkins, Ash, Baptie & Co.*,
557 N.W.2d 67 (Wis. 1996) ................................................................................... 10

*Noonan v. Nw. Mut. Life Ins. Co.*,
687 N.W.2d 254 (Wis. Ct. App. 2004) ............................................................. 14, 15

*Northgate Motors, Inc. v. General Motors Corp.*,
111 F. Supp. 2d 1071 (E.D. Wis. 2000) ................................................................ 12

*Nw. Motor Car, Inc. v. Pope*,
187 N.W.2d 200 (Wis. 1971) ................................................................................... 7

*Policemen's Annuity & Benefit Fund v. City of Milwaukee*,
630 N.W.2d 236 (Wis. Ct. App. 2001) .................................................................. 18

*Preston v. United States*,
696 F.2d 528 (7th Cir. 1982) ................................................................................. 13

*Prod. Credit Ass'n of Lancaster v. Croft*,
423 N.W.2d 544 (Wis. Ct. App. 1988) ............................................................. 14, 16

*Rubenstein v. Small*,
75 N.Y.S.2d 483 (App. Div. 1947) ......................................................................... 16

*RxUSA, Inc. v. Capital Returns, Inc.*,
2007 WL 2712958 (E.D. Wis. Sep. 14, 2007) ............................................. 15, 16, 17

*State ex rel. Susedik v. Knutson*,
191 N.W.2d 23 (Wis. 1971) ................................................................................... 19

*Taracorp v. NL Indus.*,
73 F.3d 738 (7th Cir. 1996) ..................................................................................... 8

*Third Educ. Grp., Inc. v. Phelps*,
2009 WL 2150686 (E.D. Wis. May 15, 2009) ....................................................... 13

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
96 F.3d 275 (7th Cir. 1996) ................................................................................... 10

*Welter v. City of Milwaukee*,
571 N.W.2d 459 (Wis. Ct. App. 1997) .................................................................. 18

*Wilson v. Amerada Hess Corp.*,
773 A.2d 1121 (N.J. 2001) ..................................................................................... 11

*Wisconsin Alumni Research Found. v. Xenon Pharms., Inc.*,
   591 F.3d 876 (7th Cir. 2010), 2008 WL 2861857 ..................................................10

*Wisconsin Natural Gas Co. v. Gabe's Constructions Co.*,
   582 N.W.2d 188 (Wis. Ct. App. 1998) .................................................................12

*Zastrow v. Journal Commc'ns, Inc.*,
   718 N.W.2d 51 (Wis. 2006) ...................................................................................15

**OTHER AUTHORITIES**

23 Williston on Contracts, § 63:22 (4th ed.) ..............................................................11

Fed. R. Civ. P.
   9(b) .........................................................................................................................15
   12(b)(6) .....................................................................................................................1

## NATURE AND STAGE OF PROCEEDINGS

On December 31, 2013, Plaintiff The Washington University ("Washington University") served its Complaint (D.I. 1, "Complaint" or "Compl.") against Wisconsin Alumni Research Foundation ("WARF"). WARF moved to dismiss all of Washington University's claims under Rule 12(b)(6) on February 20, 2014 ("Motion" or "Mot."). Washington University hereby responds to the Motion.

## INTRODUCTION & SUMMARY OF ARGUMENT

1.    This case involves WARF's failure to properly share the royalties it receives from a blockbuster drug's use of a patent (the "'815 Patent") jointly owned with Washington University.[1] ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

2.    ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

---

[1] Washington University does not dispute that Wisconsin law applies to WARF's Motion.
[2] AbbVie Inc., an Abbott spin-off, is Abbott's successor-in-interest under the Abbott License. (Compl. ¶ 4 n.1.) References to "Abbott" in this brief refer to Abbott and/or AbbVie Inc.

3. ███████████████████████████████████████

████████████████████████████████████████████

██████████████████ The Court need not take Washington University's word for it:  in ANDA

litigation before this very Court, WARF asserts that the '815 Patent is a blocking patent

protecting Zemplar.  (Compl. ¶¶ 34-35.) ███████████████████████

██████████████████████████ Similarly, the '815 Patent has been listed in the

Orange Book as a patent protecting Zemplar, ████████████████████

(*Id.* ¶ 29.) ███████████████████████████████

████████████████████████████████████████████

██████████████

4. WARF's apportionment of royalties to the '815 Patent is completely untethered

from the patent's worth. ████████████████████████████

This failure and WARF's related conduct, such as its refusal to share information with

Washington University, give rise to Washington University's four claims.

5. WARF's arguments for dismissal do not accurately represent the terms of the

1995 Agreement. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

6. WARF also improperly relies on "facts" that are nowhere in the Complaint.  For

example, WARF refers to U.S. Patent No. 5,587,497 as a "dominating" patent within the Abbott

License (Mot. at 1), when the Complaint mentions neither the '497 patent nor its purported "dominating" status. WARF asserts that Washington University entered into the 1995 Agreement "knowing" that the University of Wisconsin was largely responsible for the invention of the '815 Patent and that the patent was "meaningless" as compared to other patents. (*Id*. at 2.) These allegations, too, are not in the Complaint. Finally, WARF's argument that the Complaint is time-barred ignores the doctrine of periodic injury, the discovery rule, and equitable estoppel, under which all of Washington University's claims are timely. For these reasons, and others set forth in more detail below, WARF's Motion should be denied.

## STATEMENT OF FACTS

The 1995 Agreement was aimed at commercializing the work of Dr. Eduardo Slatopolsky, a researcher at Washington University, and Dr. Hector DeLuca, a researcher at the University of Wisconsin. In the early 1990s, Drs. Slatopolsky and DeLuca worked together on treatments for kidney-related conditions. (Compl. ¶ 8.) As a result of their collaboration, on July 13, 1995, Drs. Slatopolsky and DeLuca applied as co-inventors for a U.S. patent (the "'815 Patent Application") on a method for administering a particular Vitamin D compound, called paricalcitol, in order to treat renal osteodystrophy. (*Id*. ¶ 10.)

Washington University and WARF entered into the 1995 Agreement in November of that year. ████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████



The '815 Patent Application issued as U.S. Patent No. 5,597,815 on January 28, 1997.

(Compl. ¶ 17.) WARF licensed the patent to Abbott Laboratories as part of the Abbott License,

Abbott began selling Zemplar, a brand-name form of paricalcitol, and, due to Zemplar's use of

intellectual property under the Abbott License, remitting a portion of its Zemplar revenue to WARF. (*Id.* ¶ 21.) WARF, in turn, began remitting a portion of its Abbott License receipts to Washington University under the 1995 Agreement based on Zemplar's use of the '815 Patent. (*Id.* ¶ 22.)

On April 4, 2001, in response to an inquiry from Washington University, WARF described how it was determining the share of Abbott License/Zemplar royalties that were attributable to the '815 Patent under the 1995 Agreement. (Compl. ¶¶ 22-23 & Ex. B.)



In late 2012, Washington University received a subpoena from Hospira, Inc., a defendant in an infringement lawsuit filed in this District on the '815 Patent, which sought documents relating to the '815 Patent and other topics. (*Id.* ¶ 27.) Based on an investigation triggered by the subpoena, Washington University discovered that by 2011, the '815 Patent had been listed in the Orange Book as one of at most three patents owned by WARF (in part or in whole) covering Zemplar. (*Id.* ¶ 29.) Washington University also learned that the '815 Patent had been prominently asserted in patent cases in this District to protect Zemplar. (*Id.* ¶¶ 30, 34-35.)



Washington University also learned that Zemplar had become a "blockbuster" drug. (*Id.* ¶ 42.) ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ At no time, moreover, did WARF inform Washington University of facts such as the Orange Book listing and the assertion of the '815 Patent in litigation. (*Id.* ¶ 37.) WARF attempted — and to this day attempts — to keep Washington University in the dark about the proper valuation of the '815 Patent. (*Id.* ¶¶ 45-48.)

Based on WARF's failure to properly assign a relative value to the '815 Patent, and its violation of the trust Washington University reposed in WARF, among other things, Washington University alleges causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and an equitable accounting.

## ARGUMENT

### I.  WASHINGTON UNIVERSITY STATES A CLAIM FOR BREACH OF CONTRACT

Washington University's first cause of action alleges breach of the 1995 Agreement. The elements of breach of contract in Wisconsin are "a contract (duty), a breach of that contract and

damages flowing reasonably from that breach." *Nw. Motor Car, Inc. v. Pope*, 187 N.W.2d 200, 202 (Wis. 1971). WARF apparently does not dispute that the 1995 Agreement is a valid contract or that Washington University has been damaged. WARF contends only that it has not breached.

███████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

The '815 Patent is one of at most three Abbott License patents that have been listed in the Orange Book as covering Zemplar. (Compl. ¶ 29.) The Orange Book listing is significant for at least two reasons. First, it is evidence that the '815 Patent covers Zemplar, and thus serves to exclude competition against that enormously successful drug. (*Id.* ¶ 28.) Second, the act of the Orange Book listing increased the '815 Patent's value by triggering automatic exclusivity benefits. (*Id.*) Dozens of other Abbott License patents have not been similarly represented as covering Zemplar, nor have they acquired automatic exclusivity benefits. The '815 Patent is accordingly worth far more than such unlisted patents. ██████████████████████████████████

████████████████████████████

WARF also asserted the '815 Patent in numerous patent infringement cases to protect Zemplar. (*Id.* ¶ 34.) It never asserted dozens of other Abbott License patents. (*Id.* ¶ 35.) The '815 Patent's utility in protecting Zemplar in litigation indisputably makes it more valuable than the unasserted patents — but, again, WARF gives the '815 Patent the same negligible value as

---

[3] For clarity, brackets are omitted from future references to the 1995 Agreement's "relative value[]" language.

the unasserted patents.  An apportionment that ignores the '815 Patent's significantly higher

value based on these facts is not tethered to an evaluation of the '815 Patent's relative worth.



WARF's motion to dismiss is obscured by irrelevancies and alleged facts that are

nowhere in the Complaint.  (*See* Mot. at 10.)  WARF's argument boils down to two contentions,

both of which miss the mark.

    A.    **The 1995 Agreement Did Not Grant WARF "Sole Discretion" to Value the '815 Patent**

*See Taracorp v. NL Indus.*, 73 F.3d 738, 744 (7th Cir. 1996) ("[W]hen

parties to the same contract use such different language to address parallel issues . . . it is

reasonable to infer that they intend this language to mean different things." (applying Illinois

law)).

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ *Bitker & Gerner Co. v. Green Inv.
Co.*, 76 N.W.2d 549, 552 (Wis. 1956) (contract should be construed to effectuate parties'
apparent intention); *see also Herder Hallmark Consultants v. Regnier Consulting Grp.*, 685
N.W.2d 564, 566-68 (Wis. Ct. App. 2004) (absent specific price term, courts presume that
parties intend "a market or some other reasonable price" (citation & quotations omitted)).

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

---

[4] Indeed, WARF itself has argued in another case before the Seventh Circuit that "courts are to avoid [contract] interpretations that would cause unusual or unreasonable results. A court should adopt a construction that is

## B. The 1995 Agreement Did Not Authorize WARF to Value the '815 Patent Once and Then Forget About It



WARF is wrong on both counts.  First, WARF's valuation in 1998 was erroneous.  The '815 Patent was just as suitable for Orange Book listing and assertion to protect Zemplar in 1998 as it is today.  WARF's 1998 apportionment of royalties to the '815 Patent was accordingly a failure to assign "relative value" for the same reasons set forth above.  Whether or not WARF knew the true value of the '815 Patent in 1998, moreover, is immaterial; breach of contract is a strict liability claim, so WARF's intent is irrelevant.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 279 (7th Cir. 1996).

---

rational, fair and just from a business point of view."  Brief of Plaintiff-Appellee Cross Appellant Wisconsin Alumni Research Foundation at 26, *Wisconsin Alumni Research Found. v. Xenon Pharms., Inc.*, 591 F.3d 876 (7th Cir. 2010) (Nos. 08-1351, 06-3901), 2008 WL 2861857 (citations omitted).  A construction of the 1995 Agreement that would authorize WARF to deny Washington University a fair reward from the co-owned invention would be precisely the type of "unusual or unreasonable result[]" of which WARF complained.

[5] If the Court is inclined to find the 1995 Agreement ambiguous in any respect, including the scope of WARF's duty to assign relative value to the '815 Patent or to re-visit the valuation, the Court should deny WARF's motion to dismiss.  Any ambiguity in the 1995 Agreement would give rise to factual issues not suitable for resolution at this stage.  *Mgmt. Computer Servs. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 75-76 & n.22 (Wis. 1996).

████████████████████████████████████████

████████████████████████████████████████

███████████████████████

## II. WASHINGTON UNIVERSITY STATES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Washington University's second cause of action alleges breach of the implied covenant of good faith and fair dealing that is a part of every contract. *LDC-728 Milwaukee, LLC v. Raettig*, 727 N.W.2d 82, 85 (Wis. Ct. App. 2006). A party breaches the implied covenant if it exercises its contractual authority arbitrarily or unreasonably, thereby preventing the other party from receiving its reasonably expected benefits. *See, e.g.*, *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001) (applying New Jersey law); 23 Williston on Contracts, § 63:22 (4th ed.) (breach of implied covenant may be found "where the defendant acts in a commercially unreasonable manner while exercising some discretionary power under the contract").



This is just the sort of arbitrary and unreasonable action the implied covenant prohibits.

WARF's motion is silent on this cause of action, offering no express argument for why it should be dismissed. Rather, WARF cites three cases and leaves it to the Court to infer WARF's reasoning. For this reason alone, dismissal of this cause of action should be denied. Even if the Court considers WARF's cases, they provide no basis for dismissal.

*McDonald*.  WARF construes a claim for breach of the implied covenant as a tort, then cites *McDonald v. Century 21 Real Estate Corp.*, 390 N.W.2d 68 (Wis. Ct. App. 1986), to suggest that Washington University's claim does not meet tort pleading requirements.  (Mot. at 12-14.)  But Washington University's claim is a contract claim under Wisconsin law, not a tort claim.  *See, e.g.*, *Hauer v. Union State Bank of Wautoma*, 532 N.W.2d 456, 463 (Wis. Ct. App. 1995); *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 211 (Wis. Ct. App. 1995).  *McDonald* is irrelevant.

*Northgate*.  Next, WARF cites *Northgate Motors, Inc. v. General Motors Corp.*, 111 F. Supp. 2d 1071 (E.D. Wis. 2000), to argue that the implied covenant is not a basis for creating rights not expressly included in the contract.  (Mot. at 13.)  But Washington University is not seeking to create a right not expressly included in the contract — ███████████████████ █████████████████████████████████████████████████████  The implied covenant merely clarifies the scope of WARF's duty with respect to such an assignment.

*Wisconsin Natural Gas Co*.  Finally, WARF cites *Wisconsin Natural Gas Co. v. Gabe's Construction Co.*, 582 N.W.2d 188 (Wis. Ct. App. 1998), for the proposition that the implied covenant cannot override a contract's express terms.  (Mot. at 13-14.)  ███████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████

### III.   WARF'S MOTION TO DISMISS THE BREACH OF FIDUCIARY DUTY SHOULD BE DENIED

#### A.   Washington University States a Claim for Breach of Fiduciary Duty

Washington University's third cause of action is for breach of fiduciary duty. The Complaint alleges a duty in three ways. First, a fiduciary duty may arise "from a formal commitment to act for the benefit of another." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 377 N.W.2d 605, 609 (Wis. 1985). ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ As a result, WARF owes Washington University a fiduciary duty.

Second, WARF owes Washington University a fiduciary duty as a co-owner of the '815 Patent. ██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████ *See Third Educ. Grp., Inc. v. Phelps*, 2009 WL 2150686, at *8-9 (E.D. Wis. May 15, 2009). As a tenant in common, WARF has a fiduciary duty to deal with Washington University fairly with respect to the common property and to not appropriate its whole value. *See Preston v. United States*, 696 F.2d 528, 536-37 (7th Cir. 1982) (cataloguing Wisconsin cases recognizing duty between tenants in common).

Third, a fiduciary duty can arise from "special circumstances from which the law will assume an obligation to act for another's benefit." *Merrill Lynch*, 377 N.W.2d at 609. "Special circumstances" include a relationship of trust and confidence along with inequality of knowledge or other factors giving one side an advantage. *Prod. Credit Ass'n of Lancaster v. Croft*, 423 N.W.2d 544, 547-48 (Wis. Ct. App. 1988). Such special circumstances exist here. For example:



As a result, Washington University was and is completely dependent on WARF to safeguard its valuable co-ownership interest in the '815 Patent. These are precisely the types of circumstances that give rise to a fiduciary duty. ██████████████████████

████████████████████████████████

████████ (Compl. ¶¶ 22-26, 31-32, 45-47.)

*Noonan v. Northwestern Mutual Life Insurance Co.*, 687 N.W.2d 254 (Wis. Ct. App. 2004), is illustrative. In that case, plaintiffs owned annuity contracts issued by defendant insurer. *Id.* at 257. The contracts entitled plaintiffs to a share in the insurer's surplus, which the insurer was required to "equitably apportion" among policyholders. *Id.* at 260. The court found that the insurer "occupie[d] a position of trust" with respect to the surplus apportionment. *Id.* at 260.

Plaintiffs were "dependent upon [the insurer's] investment decisions and [were] thus in an inferior position." *Id.* at 261. As a result, the insurer was plaintiffs' fiduciary.

Here, similarly, WARF has a duty to properly apportion royalties from the Abbott License. WARF accordingly "occupies a position of trust" with respect to Washington University. *See id.* at 260. Moreover, Washington University was and is dependent upon WARF's decisions with respect to licensing, enforcement, and royalty apportionment. WARF, like the insurance company in *Noonan*, owes Washington University a fiduciary duty.

### B. WARF's Responsive Arguments Fail

Relying on *Jackson v. McKay-Davis Funeral Home*, 830 F. Supp. 2d 635 (E.D. Wis. 2011), WARF argues that a fiduciary duty must be express. (Mot. at 12-13.) But *Jackson* does not state that an express "fiduciary duty" is required. Rather, it notes that a fiduciary duty can arise from "an express agreement placing a greater obligation on the party agreeing to act for the benefit of the other." 830 F. Supp. 2d at 648. What should be express, in other words, is an obligation to act for another's benefit, not the magic words "fiduciary duty." The 1995 Agreement places such express obligations on WARF as set forth above.

Next, WARF argues that even if it owed Washington University a fiduciary duty, WARF's breaching conduct was not intentional. (Mot. at 13.) But a fiduciary's failure to share relevant information, such as the listing of the '815 Patent in the Orange Book, is intentional as a matter of law. *Zastrow v. Journal Commc'ns, Inc.*, 718 N.W.2d 51, 61 (Wis. 2006). In any event, WARF's state of mind is a factual issue not suitable for determination at the dismissal stage. *Gouger v. Hardtke*, 482 N.W.2d 84 (Wis. 1992); Fed. R. Civ. P. 9(b).

WARF also cites *McDonald* and *RxUSA, Inc. v. Capital Returns, Inc.*, 2007 WL 2712958 (E.D. Wis. Sep. 14, 2007), as apparently precluding this cause of action. With respect to *McDonald*, WARF appears to argue that a tort claim cannot be based solely on a contract. (Mot.

at 13.)  *McDonald* involved negligence, however, not breach of a fiduciary duty.  *McDonald*, 390 N.W.2d at 70-71.  *RxUSA* also does not help WARF.  There, the court rejected a fiduciary duty because the complaint did not sufficiently allege a duty independent of a contract.  2007 WL 2712958, at *11.  The court was apparently referring to a "special circumstances" fiduciary duty.  Here, however, the 1995 Agreement contractually created a fiduciary duty as shown above.  Moreover, unlike in *RxUSA*, the Complaint also alleges sufficient "special circumstances" to create a fiduciary duty.

WARF mentions in passing that the parties are sophisticated entities.  (Mot. at 12.)  Even if this is true — it is not in the Complaint — the parties' sophistication is only one factor in determining whether special circumstances create a duty.  *See, e.g.*, *Prod. Credit*, 423 N.W.2d at 547-48; *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 214 (Wis. 2005). ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See*

*April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 820 (1983) (applying California law); *Rubenstein v. Small*, 75 N.Y.S.2d 483, 485 (App. Div. 1947) (applying New York law).

### IV.  DISMISSAL OF WASHINGTON UNIVERSITY'S CLAIM FOR AN EQUITABLE ACCOUNTING IS INAPPROPRIATE

Washington University's fourth cause of action seeks an equitable accounting.  An equitable accounting is appropriate where a wronged party needs discovery, the relevant accounts are complicated, and a fiduciary or trust relationship exists.  *RxUSA*, 2007 WL 2712958, at *12.  The Complaint pleads these factors.

First, Washington University needs discovery, as it is unaware of the amounts Abbott has paid WARF and the amounts WARF has deducted as expenses.  (Compl. ¶ 66.)  Indeed, WARF has refused virtually all of Washington University's requests for more information.  (*Id*. ¶¶ 45-47.)  Next, it appears that WARF's royalty payment computations will be complicated enough

that the jury will benefit from an accounting, as the calculations involve multiple layers of deductions and apportionments. (*Id.* ¶¶ 15-16.) Finally, WARF is Washington University's fiduciary as set forth above.[6]

WARF primarily argues that an accounting is unnecessary because Washington University "*would* be able to gather relevant information through the discovery process." (Mot. at 15 (emphasis added).) WARF's own authority, *RxUSA*, undercuts its argument. In *RxUSA*, the court *denied* judgment on the pleadings on an accounting claim because "it [was] not certain at this time that there will be an adequate remedy at law" through future discovery. 2007 WL 2712958, at *13. This case is in a similar procedural posture. WARF's contention that future discovery may give Washington University the information it needs is premature under *RxUSA*.

WARF's other authority, *Didion Milling, Inc. v. Agro Distrib., LLC*, 2007 WL 702808 (E.D. Wis. Mar. 2, 2007), confirms that WARF's motion is premature. (*See* Mot. at 15.) The court in *Didion* granted defendant summary judgment on an accounting claim only after "three years of comprehensive discovery." 2007 WL 702808, at *11-12. Here, no discovery has taken place. It is impossible to say at this time that Washington University will have access to the information it needs through ordinary discovery.

## V.    WASHINGTON UNIVERSITY'S CLAIMS ARE NOT TIME-BARRED

WARF's argument that Washington University's breach-based causes of action are time-barred in their entirety by the statute of limitations misapprehends the applicable statutory bars.

---

[6] Even if the Court finds that WARF was not a fiduciary, Washington University's accounting claim should survive, as a fiduciary relationship is not a required element for an accounting. Where the accounts are sufficiently complex, an accounting cause of action may be sustained "[a]bsent the existence of a fiduciary relationship." *Didion*, 2007 WL 702808, at *12.

### A. Washington University's Contract Claims Are Timely Because Each Royalty Underpayment Gave Rise to a New Claim

Under Wisconsin law, where a party has an obligation to make periodic payments to another party, a new claim for breach of contract arises upon each payment that is improper. *Welter v. City of Milwaukee*, 571 N.W.2d 459, 465 (Wis. Ct. App. 1997); *Policemen's Annuity & Benefit Fund v. City of Milwaukee*, 630 N.W.2d 236, 242-43 (Wis. Ct. App. 2001). As a result, a plaintiff has "six years to sue on any . . . installment that was less than it should have been." *Welter*, 571 N.W.2d at 465.

WARF states that it has paid Washington University under the 1995 Agreement each year since 1998. (Mot. at 7.) Each payment was a separate breach of contract triggering a new six-year limitations period. Under its contract-based claims, Washington University can recover for, at minimum, each payment in the period six years prior to the Complaint filing (as extended by the parties' tolling agreement (*see id*. at 3 n.3)).

### B. Washington University's Breach of Fiduciary Duty Claim Is Timely Under the Discovery Rule

With respect to the breach of fiduciary duty claim, Washington University can recover for all of the improper royalty payments. Under the "discovery rule" applicable to breach of fiduciary duty, the statute of limitations was not triggered until Washington University "discover[ed], or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by [WARF's] conduct." *Am. Trust & Sav. Bank v. Phila. Indem. Ins. Co.*, 678 F. Supp. 2d 820, 825-26 (W.D. Wis. 2010). Washington University did not know of its injury until after it received the Hospira subpoena in late 2012. (Compl. ¶¶ 26-27.) The statute of limitations on all previous royalty underpayments was triggered at that point, at the earliest. Since Washington University filed suit within three years of that discovery, it is entitled to recover for all royalty underpayments.

██████████████████████████████████████████

████████████████████████████████████████ But

WARF did not identify the other Abbott License patents (and refuses to do so to this day).

(Compl. ¶¶ 45-47.)  Without this information, Washington University could not have evaluated

whether the *relative* valuations assigned to the Abbott License patents were appropriate. █████

██████████████████████████████████████████

████████████████████████ In any event, WARF's argument is premature, as

the discovery rule is an issue for the jury. *Am. Trust*, 678 F. Supp. 2d at 826.

### C. The Doctrine of Equitable Estoppel Entirely Precludes WARF From Asserting the Statutes of Limitations

Washington University's claims are timely for another, independent reason:  WARF is

equitably estopped from asserting the statute of limitations.  As a result, Washington University

can recover for all improper royalty payments under all causes of action.

As relevant here, equitable estoppel is appropriate where:  (1) defendant engaged in

fraudulent or inequitable conduct; (2) due to plaintiff's reliance, plaintiff failed to timely sue;

(3) defendant's conduct occurred within the limitations period; and (4) after defendant's conduct

ceased, plaintiff did not unreasonably delay in filing suit.  *State ex rel. Susedik v. Knutson*, 191

N.W.2d 23, 25-26 (Wis. 1971).  "Actual fraud, in a technical sense, is not required . . . ." *Id.*

Equitable estoppel entirely bars a party from raising the statute of limitations as a defense. *Id.*

Several of WARF's actions alleged in the Complaint support application of equitable estoppel.

Improper Assignment Recordation.  WARF improperly recorded Dr. Slatopolsky's

assignment of the '815 Patent as an assignment to WARF rather than Washington University.

(Compl. ¶ 38.)  As a result, prior to receiving the Hospira subpoena, Washington University

remained unaware of the Zemplar lawsuits that confirmed the '815 Patent's value.  (*Id.* ¶¶ 39-

40.)  The improper recordation was inequitable, and may have been fraudulent.  The improper

recordation prevented Washington University from learning of the other lawsuits and suing

earlier.  The improper recordation occurred before the statute of limitations expired on WARF's

conduct.  Finally, Washington University timely sued after learning of the improper recordation.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  WARF's actions give rise to an inference that WARF

attempted to lull Washington University into inaction regarding the royalty underpayments.  At

minimum, the Court should permit factual discovery with respect to WARF's culpability, and

WARF's statute of limitations argument should be rejected as premature.

## CONCLUSION

WARF's motion sets forth no reason to dismiss Washington University's causes of

action.  The motion should be denied in its entirety.

ASHBY & GEDDES

*/s/  John G. Day*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
amayo@asbhy-geddes.com

*Attorneys for Plaintiff*
*The Washington University*

*Of Counsel*:

Michael A. Jacobs
J. Ryan Gilfoil
Morrison & Foerster LLP
425 Market Street, 32nd Floor
San Francisco, CA  94105
(415) 268-7000

E. Cary Miller
Morrison & Foerster LLP
12531 High Bluff Drive
Suite 100
San Diego, CA  92130
(858) 720-5100


Dated:  March 24, 2014